IN THE SUPREME COURT OF THE STATE OF MONTANA

DA 08-0159

2008 MT 397

_____

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

CAROL FOSTER-DeBERRY,

      Defendant and Appellant.

O P I N I O N
and
O R D E R

_____

¶1     On January 5, 2007, Carol Foster-DeBerry (Foster-DeBerry) was charged with one felony count of criminal distribution of dangerous drugs in Cascade County District Court. During her trial, the State presented testimony from Leann Ahenakew (Ahenakew), a police informant who purchased methamphetamine from Foster-DeBerry on December 19, 2006, in cooperation with the Central Montana Drug Task Force (Task Force). Detective Robert Edwards (Detective Edwards), a detective with the Task Force, was instrumental in arranging the purchase of illegal drugs from Foster-DeBerry. During Ahenakew's controlled purchase of drugs from Foster-DeBerry, she wore a concealed transmitter which recorded the conversation between herself and Foster-DeBerry. Detective Edwards also monitored and recorded the phone calls which took place between Ahenakew and Foster-DeBerry prior to the controlled buy.

¶2     During Foster-DeBerry's trial, a compact disc of these recorded conversations was admitted into evidence by the State. Apparently, the Task Force did not obtain a search warrant prior to recording the conversations and interactions between Ahenakew and Foster-DeBerry. Foster-DeBerry was ultimately convicted by a jury on January 24, 2008.

¶3     Foster-DeBerry is pursuing an appeal, challenging her conviction on several grounds. However, she now seeks to stay her appeal and remand this matter to the District Court for a hearing to consider whether the telephone and transmission recordings used in this case, and the testimony of the informant and officer who administered the transmission, should be suppressed in light of this Court's recent ruling in the consolidated appeals of *State v. Goetz* and *State v. Hamper*, 2008 MT 296, 345 Mont. 421, 191 P.3d 489. Foster-DeBerry argues that because the State did not obtain a search warrant prior to the recording of her conversations and interactions with Ahenakew, the *Goetz* decision should be retroactively applied to her pending appeal, and that the evidence should be suppressed.

¶4     The State objects to Foster-DeBerry's motion. The State argues that Foster-DeBerry is not entitled to retroactive application of *Goetz* based on the procedural posture of her appeal. In *Goetz*, this Court held that the electronic monitoring and recording of face-to-face conversations between confidential informants and defendants without a warrant, or the existence of an established exception to the warrant requirement, violates Article II, Sections 10 and 11 of the Montana Constitution. *Goetz*, ¶ 54. The State argues that Foster-DeBerry is not entitled to the retroactive application of *Goetz* because she did not file a motion in the District Court to suppress the recordings of

2

telephone conversations or transmissions used in this case, nor did she otherwise raise before the District Court the legal issues addressed in *Goetz*. The State concedes that Foster-DeBerry could mount a suppression challenge on appeal under this Court's common-law plain error doctrine; however, it argues that because she has not done so, she should not be allowed to argue for the retroactive application of *Goetz*.

¶5 As we stated in *State v. Waters*, 1999 MT 229, 296 Mont. 101, 987 P.2d 1142, "[r]etroactivity is a threshold matter which . . . compels the evenhanded application of a new rule for the conduct of criminal prosecutions to all similarly situated cases that are pending on direct review or not yet final." *Waters*, ¶ 21 (internal quotations omitted). The State maintains that in order for a case to be "similarly situated," the cases must have similar procedural histories and the defendants must have raised "like issues" before the district court.

¶6 To date, we have not had occasion to define the precise meaning of the phrase "similarly situated" in the context of retroactivity. However, as the State correctly notes, we generally adhere to the principle that objections concerning jurisdictional or constitutional matters must be raised below in order to be preserved for appeal. *See State v. Gray*, 2004 MT 347, ¶ 19, 324 Mont. 334, ¶ 19, 102 P.3d 1255, ¶ 19 (citing *State v. Kennedy*, 2004 MT 53, ¶ 28, 320 Mont. 161, ¶ 28, 85 P.3d 1279, ¶ 28). There are rare exceptions to this principle in the context of retroactivity. *See State v. Carter*, 2005 MT 87, ¶¶ 13-19, 326 Mont. 427, ¶¶ 13-19, 114 P.3d 1001, ¶¶ 13-19. However, aside from the unique circumstances of *Carter*, in those cases where we have given retroactive application to a new rule it appears that the issue addressed by the new rule had been

3

raised by the defendants below. *See Waters*, ¶ 21 (citing examples of cases in which retroactivity was applied); *State v. Logan*, 2002 MT 206, ¶¶ 14-15, 311 Mont. 239, ¶¶ 14-15, 53 P.3d 1285, ¶¶ 14-15.

¶7     The Wisconsin Court of Appeals considered a similar retroactivity issue in *State v. Zivcic*, 598 N.W.2d 565 (Wis. App. 1999). In *Zivcic*, relying upon *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708 (1987), that court reasoned as follows:

> The rationale for requiring retroactive application to all cases pending on direct review was that to apply the new rule only to the fortunate case in which the issue was decided, would be unfair to all the other appellants who had similarly preserved the issue, but were not the first in the appellate queue. *See Griffith*, 479 U.S. at 323, 107 S.Ct. 708. The *Griffith* court explains the reasoning:
>
>> As a practical matter, of course, we cannot hear each case pending on direct review and apply the new rule. But we fulfill our judicial responsibility by instructing the lower courts to apply the new rule retroactively to cases not yet final. Thus, it is the nature of judicial review that precludes us from "[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule."
>
> *Id.* at 323, 107 S.Ct. 708 (quoted source omitted). **To be a "similar" case, of course, the issue must have been preserved in the trial court** . . . .

*Zivcic*, 598 N.W.2d at 568 (emphasis added).

¶8     We agree with the Wisconsin Court of Appeals' reading of *Griffith*. Based on the general requirement that parties must raise constitutional and jurisdictional issues at the trial court level in order to preserve them for appeal, we adopt the reasoning of the Wisconsin Court of Appeals in *Zivcic*. As a general principle, in order for a case to be

4

"similarly situated" for purposes of retroactive application of a newly-announced rule, the issue addressed by the new rule should be raised by the movant at the trial court level and properly preserved for appeal. Without addressing the actual merits of her challenge, had Foster-DeBerry filed a motion to suppress or otherwise challenged the admission of the recordings under Article II, Sections 10 and 11 of the Montana Constitution, her case might arguably be eligible for retroactive application of *Goetz*, even if she had not advanced precisely the same arguments advanced by the parties in *Goetz* and *Hamper*. However, Foster De-Berry never filed a motion to suppress, nor did she raise the legal issues addressed in *Goetz* in the District Court. Because she did not preserve the issues addressed in that case, and because no "unique circumstances" analogous to those in *Carter* are present which would compel the Court to retroactively apply *Goetz,* we conclude she is not entitled to the benefit of retroactive application of *Goetz*.

¶9    The only exception to the foregoing principle would be a challenge under the common law plain error doctrine. "Plain error review allows this Court to discretionarily review claimed errors that implicate fundamental constitutional rights, even if no contemporaneous objection is made . . . when failing to review the claimed error 'may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.' " *State v. Stewart*, 2000 MT 379, ¶ 33, 303 Mont. 507, ¶ 33, 16 P.3d 391, ¶ 33 (quoting *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996)). This Court will exercise plain error review sparingly. *State v. Mackrill*, 2008 MT 297, ¶ 48, 345 Mont. 469, ¶ 48, 191 P.3d 451, ¶ 48 (citing *State v. Rosling*, 2008 MT 62, ¶ 77, 342

5

Mont. 1, ¶ 77, 180 P.3d 1102, ¶ 77).  Foster-DeBerry has not argued for application of the plain error doctrine; therefore, we decline to invoke it in this case.  Accordingly,

¶10    IT IS HEREBY ORDERED that Foster-DeBerry's motion to remand this matter for hearing and for stay of appeal is DENIED.

¶11    DATED this 25th day of November, 2008.


                                        /S/ PATRICIA COTTER


We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE